## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:

BRENDA DIANA NESTOR,                          Case No.: 17-21187-BKC-AJC
                                              Chapter 11

_____Debtor._____/

### SURETY'S RESPONSE TO EXPEDITED MOTION FOR
### RELIEF FROM AUTOMATIC STAY

The surety, Fidelity & Deposit Company of Maryland ("**F&D**"), responds to the motion titled Curator's Expedited Motion for Relief from Automatic Stay to Allow State Court Litigation to Proceed or for a Determination That the Automatic Stay Does Not Apply to Pending State Court Action ("**Motion**") [D.E. 6]. In support of this response, the F&D states the following:

#### INTRODUCTION

The Motion follows the Curator's persistent strategy to pursue F&D by alleging the Debtor engaged in wrongful conduct while serving as a personal representative. By filing for bankruptcy protection, the Debtor has hampered the Curator's strategy. The Curator must therefore break free from this Court's restraints by seeking relief from the automatic stay. But that attempt fails because the motion suffers from far too many incurable defects.

The Curator bears the burden to show the Court that it meets the criterion for obtaining relief from the automatic stay. First, the Motion fails to show the Debtor would suffer no prejudice in her ability to reorganize. The Curator stated that he must meet this standard, but then did not attempt to apply the facts presented here to that standard.  The Curator therefore failed to meet his burden. But what's worse, the facts related to the Curator's claims against F&D show the Debtor would suffer great prejudice in her effort to reorganize unless the Court denies the Motion.

Second, the Curator cannot demonstrate that denying the motion would waste judicial resources. In fact, enforcing the automatic stay to resolve all the issues in an orderly manner conserves judicial resources. Therefore, the Motion fails to show the judicial resources factor weighs in the Curator's favor.

Third, to obtain relief from the stay, the Curator may elect to show prejudice that he may suffer. But the Curator ignored this factor, and therefore, failed to meet his burden. As a practical matter, it should not prejudice the Curator to have this matter decided in an orderly fashion that ensures the previous legal work does not go to waste, and the claim against F&D gets decided on its merits. The third factor also weighs against the Curator.

Fourth, the Curator threw in an argument that the Court may examine whether he has a probability to succeed on the merits of the claim alleged against F&D. Without detailing this argument in the Motion, it appears the Curator invited the Court to examine the second amended complaint he filed, hoping the Court finds the allegations compelling. But that does not meet the burden to show there is a probability of success on the merits. At its core, the Curator has alleged the Debtor failed to meet the standard of care required for a personal representative. But the facts and the Debtor's judgment presented in the underlying probate matter show the Curator does not have a probability of success.

The bottom line is the Motion leaves open various gaps, and therefore, it fails as a matter of law. By reviewing several factors in detail, the Motion has the opposite effect – it shows the totality of the circumstances weigh against the relief sought. Accordingly, the Court should deny the Motion.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

### PROCEDURE AND BACKGROUND

1.      The Debtor is the former personal representative of the Estate of Victor Posner who

died on February 11, 2002, and opened the Estate in the Probate Court in and for Miami-Dade

County, Florida, Case No. 2002-0595-CP (the "**Posner Estate**"). [D.E. 6 Ex. 3 ¶ 16]

2.      When Victor Posner died, he left an estate burdened with widespread liabilities,

which included without limitations, the following:

> a       For instance, The Internal Revenue Service ("**IRS**") issued a
> Notice of Tax Deficiency of $121,636,311, which was in
> addition to the uncontested $18,787,516 in estate tax
> liability. In addition to those tax issues, Posner had made a
> series of gifts during his life for which he had never paid the
> gift taxes, which amounted to $6,443,293 in tax liability. *See*
> Initial Report of Stewart A. Marshall ("**Marshall Report**"),
> appended to this response as Exhibit 1 at 5, 8, 41.

> b       The Posner Estate also faced myriad legal challenges. One
> such case involved Victor Posner's daughter, Gail Posner,
> who commenced a case involving a Posner Estate affiliated
> entity in which she sought more than $150,000,000. Ex. 1 at
> 5, 15-19.  The following lists other, but not all, cases
> involving the Posner Estate:

| FILED | CASE NO. | STYLE | DESCRIPTION |
|-------|----------|-------|-------------|
| 3-8-02 | 02-1027-CP-04 | Kelly Posner-Gerstenhaber, Jarrett Posner and Sean Posner v. Brenda Nestor, as Personal Representative of the Estate of Victor Posner | Adversary Proceedings:  Action to revoke the 2001 Will |
| 5-15-02 | 02-2058-CP-02 | Tracy P. Ward v. Brenda Nestor, individually and as Personal Representative of the Estate of Victor Posner, Deceased | Adversary Proceedings:  Petition for Partial Revocation of Will |
| 7-1-02 | 02-2835-CP-04 | Lisa Mottram individually and as a First Successor Trustee and a beneficiary of 100 Lincoln Road Trust, dated June 22, 1984 v. Brenda Nestor,  individually and as personal representative of the Estate of Victor Posner | Trust dispute |
| 7-29-02 | 02-3301-CP-02 | [Petitioner: Tracy Ward Posner] In re Irrevocable Trust Agreement for Victor Posner (Trust 6) dated September 25, 1968 | Complaint for Accounting, Breach of Fiduciary Duty, Removal of Trustees and for Injunction |
| 8-21-02 | 02-3701-CP-02 | [Petitioner:  Lance Troy Posner] Adversary Proceeding:  Complaint for Accounting to Compel Distribution & For Removal and Replacement of Trustees | Action for Accounting, to Compel Distribution and For Removal and Replacement of Trustees |

3

Ex. 1 at 6.

  c  The challenges that faced the Posner Estate did not end with these tax and legal challenges, there were also affiliated entities that had been in operation for more than 100 years. These entities suffered from large-scale environmental contamination.  Counsel for the Posner Estate advised that those liabilities could not be abandoned or avoided, and the Debtor devised a remediation strategy and plan. Ex. 1 at 6, 20-24.

  d  In addition to the environmental contamination, the Posner Estate affiliated entities presented a series of pension liabilities.  Each business had defined benefit pension plan, such that closing or abandoning the businesses and their pension plans would cause the Posner Estate to immediately incur a large lump-sum debt. Ex. 1 at 6, 29-31.

3.  On August 12, 2016 styled, *Philip von Kahle, on behalf of the Governor of Florida, for the use and benefit of the Estate of Victor Posner and for All Other Interested Parties, v. Fidelity & Deposit Company of Maryland*, Case No. 16-21099-CA-40 in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "**State Court Case**") seeking to recover damages against F&D (the "**Second Amended Complaint**") under a surety bond (the "**Bond**"). [D.E. 6 at Ex. 3]

4.  The Second Amended Complaint seeks to recover the Bond's penal sum, alleging the Debtor engaged in various forms of misconduct while serving as the personal representative. *Id.*

5.  All material facts alleged in the Second Amended Complaint target the Debtor – not F&D – claiming the Debtor committed several wrongful acts. *Id.*

6.  F&D commenced a third party, pass-through claim in the State Court Case against the Debtor alleging indemnity. *See generally*, Fidelity and Deposit Company of Maryland's Third Party Complaint Against Brenda D. Nestor appended to this response as Exhibit 2.

7.      On August 31, 2017, the Debtor filed a voluntary petition for relief in this Court ("**Bankruptcy Case**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"). [D.E. 1]

8.      The Curator appeared in the Bankruptcy Case, and moved under Bankruptcy Code section 362(d)(1) for relief from the automatic stay provided for under Bankruptcy Code section 362(a) (the "**Stay**"). [D.E. 6]

9.      F&D files this response to oppose the Motion.

ARGUMENT

"As a general rule, the filing of a bankruptcy petition operates to stay litigation involving prepetition claims against a debtor." *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001) (citing 11 U.S.C. § 362(a)(1)). The automatic stay may be lifted if an interested party demonstrates "cause." *Id.* (citing 11 U.S.C. § 362(d)(1)). The Bankruptcy Code does not define the term "cause", and therefore, the courts have reasoned that they must examine the totality of the circumstances for each case in which a movant seeks relief. *Id.*

In the Motion, the Curator's arguments fall into 2 categories – one is two sentences long (the stay does not apply), and the other comprises the remaining argument (the Court should lift the stay). For the first argument, the Curator states in conclusory fashion that the Bond is not property of the Bankruptcy Case estate, and therefore, the Stay does not apply. But Bonds, like insurance policies, are property of the bankruptcy estate. *In re Gov't Sec. Corp.*, 101 B.R. 343, 346 (Bankr. S.D. Fla. 1989), aff'd, 111 B.R. 1007 (S.D. Fla. 1990), aff'd, 972 F.2d 328 (11th Cir. 1992). In *In re Gov't Sec. Corp.*, this Court reasoned that "[i]t is beyond cavil that the Trustee's rights under the bond constitute and constituted property of the estate under Section 541 of the Code . . . ." when it decided whether a surety bond was property of the estate. *Id.* at 347. The surety in *In re Gov't Sec. Corp.* argued, in relevant part, the termination clause in the bond ended its obligations

5

under it. But the facts showed that the surety had received the premium for the bond, and issued it. *Id.* at 344-345. The Trustee also put the surety on notice that there may be third party claims against the bond. *Id.* The Court concluded that "bonds, like insurance policies, are among those property interests of the estate protected by the Code's anti-termination provision contained in Section 541(c)(1)(B)." *Id.* at 346.

It should be beyond cavil here that the Bond is property of the bankruptcy estate. In particular, the Bond covered the Debtor for her acts while she served as the personal representative for the Posner Estate, and therefore, it covers all claims alleged against her as the personal representative. Therefore, claims by creditors against the Debtor for which there is a bond to fund pay those claims is property of the estate. The Curator's conclusory argument that the Bond is not estate property therefore fails.

For the second argument, the Curator has sought relief from the Stay, but he failed to meet the burden to establish a *prima facie* case supporting the Motion. *In re Flintkote Co.*, 533 B.R. 887, 891 (D. Del. 2015), reconsideration denied sub nom. *In re The Flintkote Co.*, BR 04-11300-JKF, 2015 WL 4269920 (D. Del. July 14, 2015), and aff'd sub nom. *In re The Flintkote Co. 8 E. Frederick Place, LLC*, 655 Fed. Appx. 931 (3d Cir. 2016). The movant must show cause exists to lift the Stay. *In re Feingold*, 730 F.3d 1268, 1270 (11th Cir. 2013). As the Curator explained, to show cause requires "a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." [D.E. 6 ¶ 24 (citations omitted)] In its analysis, the Court should examine several factors to determine whether there exists cause to lift the Stay: (a) prejudice to the Debtor's ability to reorganize under the Bankruptcy Code, (b) conserving judicial resources, and (c) prejudice to the movant. [D.E. 6 ¶ 25] The Curator's argument amounts to little more than conclusory statements that mimic the cases, and a jump to conclude that the factors weigh against the Debtor. But by examining the totality of the

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

circumstances, and inquiring into the law surrounding the issues presented under the relevant allegations, there is but one conclusion; the Curator's argument falls well short.

**A.      The Curator Failed to Meet His Burden to Show There Would Be No Prejudice to the Debtor's Ability to Reorganize.**

The Curator attempts to argue there is no prejudice to the Debtor's ability to reorganize under the Bankruptcy Code by allowing the State Court Case to proceed because the Curator sued only F&D. That argument ignores the facts alleged, and seeks to impose a narrow analysis rather than the mandated totality of the circumstances. The specific law and facts governing this analysis reveal the several flaws in the Curator's argument.

First, the Curator has invited the Court to construe the claim it has alleged against F&D in isolation, suggesting he does not also have a claim against the Debtor. Bankruptcy Code section 101(5)(A) defines the term "claim" to mean, in pertinent part, the following: "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." The facts alleged demonstrate beyond any dispute that the Curator has a claim against the Debtor as defined under the Bankruptcy Code. The decision to proceed against F&D at this time – not the Debtor – does not extinguish any claims the Curator has against the Debtor. But also, the Curator has alleged the damages to the Posner Estate exceed the penal sum under the Bond, which means the Curator has the right to pursue the Debtor for any excess liability in the event he prevails against F&D. The argument, therefore, that the Curator has only sued F&D is immaterial, and ignores the fact that all material allegations interposed in the complaint relate only to the Debtor.

Second, allowing the State Court Case to proceed will result in a decision on the merits about facts that must affect the Debtor. For example, The Curator has alleged the Debtor, while serving as personal representative over the Posner Estate, failed to address a defined benefit

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

pension plan governed by ERISA, 29 U.S.C. Ch. 18, that gave rise to an ERISA liability purportedly amounting to the following damages: (i) approximately $24,000,000 in unpaid funding contributions, (ii) approximately $38,800,000 in unfunded benefit liabilities, and (iii) approximately $7,900,000 in termination premiums. *Id.* ¶¶ 36-49. Although ERISA liability relates to Posner Estate affiliated entities, if the Curator prevails on these claims, the Debtor may face an adversary complaint to establish the nondischargeability of the pension plan's debt under Bankruptcy Code section 523(a)(4). The Debtor may also have to confront a proof of claim filed on behalf of the pension plan under ERISA section 502(a), seeking to have the pension plan debt classified as a priority unsecured claim. Each creditor action taken as a result of the State Court Case outcome prejudices the Debtor's ability to reorganize.

Although the consequences associated with these allegations occur regardless where the case proceeds, the Debtor would have to expend bankruptcy estate resources to participate in defending the claims in the State Court Case alongside F&D. Further, because these issues overlay the Debtor's rights under the Bankruptcy Code, it is more practical that these issues not proceed in state court.  But the prejudice on the Debtor associated with the ERISA issues exist, and the Curator cannot ignore it.

Similarly, the Curator has alleged the Debtor caused the Posner Estate to fall behind in the estate tax and the affiliated entities' tax obligations resulting in the IRS imposing levies and penalties. [D.E. 6 Ex. 3 ¶¶ 57-63] Specifically, as alleged, the Debtor failed to pay tax instalments when due resulting in the IRS imposing penalties against the Estate for $4,004,884. Id. ¶ 58. And the Curator alleged the Debtor engaged in a series of unauthorized transactions benefitting her directly or indirectly by more than $5,000,000. *Id.* 26 U.S.C. § 6324(a)(2). Under 26 U.S.C.A. § 6324, the Debtor may face personal liability under the facts alleged by the Curator:

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

> If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax. . . .

In other words, section 6324(a)(2) imputes personal liability for federal estate taxes to certain individuals who receive property from an estate at the time of a decedent's death. *Baptiste v. C.I.R.*, 29 F.3d 1533, 1538 (11th Cir. 1994). For the same reasons the ERISA issues prejudice the Debtor, the estate tax issues also prejudice her.

But the *Baptiste* case is instructive here for an additional reason. The court applied the *res judicata* doctrine.[1] The issue the appellant wanted to litigate in the tax court was identical to the issue already decided. *Baptiste*, 29 F.3d at 1540. As a transferee of the estate under Section 6324(a)(2), the appellant was in privity with the estate, and as such the court treated the appellant as a party to the prior action. *Id.* The tax court's final order setting the estate tax deficiency for the decedent's estate was a final judgment on the merits. *Id. Res judicata* barred relitigating the issue in *Baptiste*, and allowing the State Court Case to proceed, may end up barring the Debtor from being able to defend the claims in the case at bar.

ERISA and estate tax are just 2 issues of many that the Curator has raised by the facts he has alleged, and having those issues decided in the State Court Case prejudices the Debtor's ability to reorganize. Likewise, the several other issues raised by allegations in the Second Amended

---

[1] The court referred to its analysis as *res judicata*, while addressing what appeared to be issue preclusion. Typically, res judicata refers to claim preclusion, and collateral estoppel refers to issue preclusion. Regardless which preclusion doctrine name applies, if the Court grants the Curator relief from the Stay, and prevails in the State Court Case, the Debtor may be unable to defend against any claims because the state court will have decided all the issues related to the facts alleged against her.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

Complaint also result in prejudice to the Debtor's ability to reorganize. The federal issues highlighted here also belie the Curator's argument that there are only state law at issue in the Second Amended Complaint.

A separate matter involving Florida law matter now injected into the Bankruptcy Case arises under Florida Statute section 60.04, which provides a surety the right to obtain an injunction against the Debtor to prevent her from disposing of her assets:

> When actions are commenced on the bond of any executor, administrator, guardian or trustee, or for an accounting, the surety on the bond may apply to the court in which the action is pending, if in chancery, or if the action is at law, then to any chancery court having jurisdiction, for an injunction restraining any principal in the bond from disposing of his or her property and from encumbering or removing it from the county in which it is located until the final disposition of the action. . . . .

Section 60.04 confers on F&D the right to seek an injunction to prevent the Debtor from disposing of her property. But as is the case with the Curator, the factors weighed in deciding whether to lift the Stay do not weigh in F&D's favor either. And for the Debtor, there can be no dispute that her property is central to being able to reorganize under the Bankruptcy Code. Therefore, allowing the Curator relief from the stay would deprive F&D of its statutory right to protect itself by securing the Debtor's property as collateral for any obligations that may arise under the Bond.

Lifting the Stay here imposes crushing prejudice on the Debtor's ability to reorganize under the Bankruptcy Code. Balancing the first factor required for lifting the Stay not only shows that the Curator has failed to establish there would be no prejudice to the Debtor's effort to reorganize, but underscores the fact that the scale tips in the Debtor's favor. This sole factor is sufficient to warrant the Court denying the Motion as a matter of law.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL 33301
TELEPHONE (954) 987-7550

**B.** **Denying the Motion for Relief from the Stay Does Not Waste Judicial Resources.**

Even if the Curator had not failed to meet his burden to show this factor weighed in his favor, the circumstances here establish that denying the Motion conserves judicial resources. It is not clear whether the Curator has attempted to address the judicial resources factor, but he did argue that the State Court Case is "substantially advanced," set for the trial period beginning on April 30, 2018, and the parties have undertaken extensive discovery and pretrial preparation in the matter. [D.E. 6 ¶ 34] F&D presumes the Curator has made those assertions about the status of the State Court Case to support his judicial economy argument. If not, the Curator has made no argument regarding the judicial resources factor. If so, those facts establish nothing with respect to judicial economy.

As an initial matter, there is no waste to judicial economy by allowing this case to proceed in an orderly fashion outside the state court. Moreover, trial in the State Court Case is not eminent, it is more than 7 months from now. But also, on August 15, 2017, the Curator filed in the State Court Case the Second Amended Complaint in which the Curator seeks in excess of $50,000,000 in alleged damages. Within those purported damages are new claims that did not exist before August 15, 2017. The timing for the Second Amended Complaint undermines the suggestion that the State Court Case is ready for trial. Even if the case was ready for trial, the extensive discovery and pretrial preparation performed by the parties does not go to waste, those preparations work in either forum. As for the location of witnesses, documents, and other necessary parties, they are in South Florida, which is the identical location for the State Court Case.

The Curator has therefore failed to show that weighing the burdens on judicial economy favor the Curator. But the Curator goes one step further, and raised a point in the Motion that tilts the balance against him. Specifically, the Curator argued that after the State Court Case concludes,

and assuming the Curator prevails, F&D must still liquidate its claim against the Debtor before this Court. Therefore, the process proposed by the Curator does not preserve judicial resources; after one case concludes the Debtor will litigate the issues again in this Court.[2]

### C.    The Curator Did Not, and Could Not, Attempt to Demonstrate He Suffers Prejudice If the Court Denied the Motion to Lift the Stay.

There is nothing stated in the Motion that shows the Curator would suffer prejudice if the Court denied the Motion, and therefore, he failed to meet his burden on the final factor. The Curator's decision not to address this factor makes sense because there should be no prejudice to him by allowing the claims to proceed outside the state court. The work performed thus far does not go to waste; the Curator may use all legal work performed to date as the case proceeds here. The Curator will have his trial on the merits just as he would if the State Court Case proceeded. Therefore, the prejudice to the Curator factor does not save the Motion.

### D.    The Curator Cannot Show He Has a Probability to Succeed on the Merits of the Claim Alleged Against F&D.

As a final throw-in, the Curator argues that this Court may evaluate whether the creditor has a probability of success on the merits. [D.E. 6 ¶ 33] (citing *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001)). Having this Court evaluate the standard of care allegations works against the Curator's attempt to lift the Stay. The case alleged against F&D turns on whether the Debtor met the necessary standard of care required to execute her duties as the personal representative of the Posner Estate. [D.E. 6 Ex. 3; *see also generally*, Ex. 1].

The Posner Estate presents several challenges to the Curator's claim. Ex. 1 at 6. Liquidating the Posner Estate assets quickly would have likely depressed their value as is the case with all other distressed sales processes. *Id.* In recognition of the challenges, the Will governing the Posner

---

[2]    Based on the Curator's argument, the prejudice to the Debtor discussed above finds further support because she must incur greater costs for dealing with 2 separate cases rather than one.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

Estate contains express terms to insulate the Debtor from legal challenges second guessing her decisions. *Id.* at 7.

Despite the challenge, the Debtor executed a comprehensive strategy. The Debtor engaged the following preeminent and competent counsel to assist:

(1)     Kirkland & Ellis to handle the tax issues, including litigating against IRS, tax planning to liquidate the Posner Estate assets, the financially beneficial way to pay taxes, and address tax issues related to probate. *Id.* at 8;

(2)     Kirkland & Ellis and Richards, Layton & Finger to assist and advise on environmental and bankruptcy issues. *Id.*;

(3)     Ferrell Schultz to assist with Florida probate issues, to defend against beneficiary claims, and to provide advice relating to the operation of the businesses and environmental issues. *Id.*;

(4)     Groom Law Group, to handle ERISA issues, *Id.*; and

(5)     Alston & Bird to assist and advise regarding pension liability issues.

The Debtor then followed advice of her several counsel in executing the strategy they developed to administer the Posner Estate. *Id.*

The Debtor achieved successes. For instance, after more than a decade of litigating with the IRS, the Estate prevailed on every issue and defeated the entire $121,636,311 tax deficiency assessment. *Id.* The Posner Estate deferred the uncontested estate tax liability owed by utilizing Internal Revenue Code section 6166. Ex. 1 at 5, 8, 26, 41. In addition to deferring the estate tax, the Posner Estate deferred pension liability by continuing business operations for the Posner Estate affiliated businesses. Ex. 1 at 6, 29-31. The Debtor also settled a malpractice claim for the Posner Estate garnering $20,000,000. Ex. 1 at 8.

Not only has the Debtor resolved these liabilities, she settled heavily contested litigation resulting in court approval for the disputed matters. Ex. 1 at 5, 15-19. More specifically, the Debtor

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

obtained court-approved settlements or otherwise successfully concluded all beneficiary claims. *Id.* Through operating the businesses, the Debtor generated tens of millions of dollars for the Posner Estate, which facilitated paying tax, pension, and other obligations. Ex. 1 at 9. The Debtor also successfully remediated environmental issues related to the Posner Estate affiliated entities, which freed the Posner Estate from liability in favor of the EPA and others. Ex. 1 at 6, 20-24.

As detailed in the Marshall Report, the Debtor performed her personal representative duties with due care. The Curator nevertheless grasps for some claim that might stick, but that attempt amounts to an overreach. There is no basis for the Curator to substantiate his argument that he has a "probability" to succeed on the merits of the claim. Instead, the facts show the Debtor met her standard of care, and therefore, the claim alleged against F&D must fail.

### CONCLUSION

Based on the foregoing points and authorities, the surety, Fidelity & Deposit Company of Maryland, respectfully requests the Court deny the motion for relief from the automatic stay, and grant such further relief as the Court deems just, fair, and equitable.

BECKER & POLIAKOFF, P.A.
***Attorneys for Fidelity & Deposit Company of Maryland***
1 East Broward Blvd., Suite 1800
Fort Lauderdale, FL  33301
T:  954-987-7550 | F:  954-985-4176
Email:  jpolenberg@bplegal.com

By: */s/ Jon Polenberg*
Jon Polenberg (FBN 653306)

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 15, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel or parties of record via Electronic Filing generated by CM/ECF to counsel of record and the Office of the US Trustee.

*/s/   Jon Polenberg*
Jon Polenberg (FBN 653306)

ACTIVE: 10111774_1

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550